Good morning, Your Honors. May it please the Court, I am Mark Angelucci, representing the Plaintiffs and the Appellants, National Coalition for Men, and James Lesmeister. As the Court knows, this case is a constitutional equal protection challenge to the sex-specific requirement that men, and only men, have to register for the Selective Service. We are here today on appeal because the District Court held that the case is not ripe because it was not certain whether and to what extent women would be allowed in combat, and also because it found that the harm to men was de minimis. The decision was wrong for three reasons, and I'll be arguing all three, but I'd like to briefly state them. First, the Court relied on a six-month-old military directive without allowing us to do discovery. The first one is the circumstances have changed, so what's the relevance of that? The circumstances have indeed changed. Why are we worrying about what was the case at the time of the District Court? I mean, isn't ripeness determined as of now, or is it determined as of now? Well, I would agree, Your Honor, and I was going to point that out. Otherwise, you're just going to go back and file a second lawsuit, so what's the point, if it's ripe now? Well, I agree with you, Your Honor, but I was going to point out that, in our opinion, it was also ripe when the Court made the decision. Go ahead and argue a useless point if that's what you want to do. Then I'll skip that part. We now have documents filed by the Department of Defense, by the Selective Service, indicating very clearly women will be allowed in all combat roles. And so, as you said, Your Honor, the case is ripe. I didn't say it was ripe. I said that there were different circumstances now. Well, fair enough. The circumstances, Your Honor, have been changing ever since the Roster decision. At the time of the Roster decision in 1981, men were not allowed in any combat roles. As we know, since that time, even before the 2013 directive, women were serving in thousands of combat roles on combat vessels, combat aircraft, in thousands of ground combat roles in Iraq and Afghanistan. It is our position that it was ripe long ago. Counsel, counsel. Why wouldn't it have been ripe? I'm sorry, Judge Gould. Well, I was just going to interject. It seems to me that there's no need to argue about whether it was ripe at an earlier time. The question is, is it ripe now? Fair enough. In light of what the Department of Defense has said so clearly. All I wanted to do was clarify this. As I understand it, the district court didn't make any merits ruling. In other words, didn't say whether if women are in combat, the government can't, under equal protection principles, have a selective service registration for men but not women. The district court didn't address that at all, right? That is correct, Your Honor. Is it your position now that our panel should just reverse the ripeness decision and send it back so the district court can get to the merits? That is correct. Okay, I don't have any questions. As far as I'm concerned, just speaking as one judge, that's probably what we should do. And you could save your time and hold it for rebuttal and see if the government disagrees with the idea that Department of Defense action makes this right now. Or disagrees with Judge Berzon's comment that we look at ripeness at the time of our review, not when the district court reviews. I will do that, Your Honor. I'll stop and I'll resume. Thank you. Thank you. Good morning. May it please the court. Sonia McNeil for the government. Judge Gould, I'd like to start with your question, if I may. This case is no more ripe today than it was when it was before the district court. The political branches are currently in the process of deciding the degree to which the changes that have happened since the time of the Supreme Court's decision in Rosker render women equally situated to men for purposes of the draft. But it would not be appropriate for this court to reverse and send back to the district court for a merits ruling for the further reason that the plaintiffs in this case lack standing. But it certainly is more, I mean, first of all, I don't think there was ever a ripeness issue in my view because, and I'm not sure you do either because you didn't defend it that much, in the sense that whatever the circumstances were at any particular time might mean they might win the merits or might lose the merits, but it doesn't mean that it's not ripe. In other words, the circumstances are whatever they are and they can be just discerned and either Rosker still is binding or it isn't binding depending on what the facts show. But I don't know if any of that has to do with ripeness. Well, here I think Rosker is instructive. Of course, in reaching the merits decision in Rosker, what was crucial to the court's consideration was Congress's findings on the extent to which women and men were similarly situated with respect to the draft. Congress in this case, notwithstanding the Secretary's announcement last Thursday, has not had the opportunity. That may be. That all goes to the merits of the case, but it doesn't go to ripeness. I disagree, Your Honor. Ripeness, of course, is discretionary and the questions that we consider when we decide ripeness are the fitness of the case for decision and the hardship to the plaintiffs in delay. I'd like to start with the second prong. I do believe it's important here there is no assertion in the complaint of any injury whatsoever. I mean, I understand that ripeness and standing are close and I expect you to argue standing and maybe that's what you should be doing, but calling it ripeness doesn't seem very helpful. But I understand that there is an issue as to whether they really have a problem and I'm happy to hear about it. I agree with you, Your Honor. There's some relationship between the hardship prong of ripeness and the standing inquiry to the extent that there's both injury and redressability, which in this case there is neither. The standing inquiry, of course, has particular importance and the court applies it with special rigor in a case where the plaintiffs challenge the constitutionality of an act of Congress. Here, if you'll refer to the complaint, you'll see that there is no assertion of any injury whatsoever. The assertion of injury is that the Equal Protection Clause is being violated because I'm being treated differently than if I was a woman. Now, it's true that, and what makes this case interesting and difficult, is that in all likelihood the ultimate remedy, if they were proven correct, would be that they would still have to register, but women will too. But they do have an assertion of an injury, i.e., we have to register. If we were a woman, I wouldn't have to register. That's their assertion. I disagree with you, Your Honor. I don't think that that's a fair reading of their complaint. What we know is that Mr. Lesmeister, one member of the National Coalition for Men, has registered. He doesn't say in his complaint whether or not his grievance is associated with some sort of feeling of stigmatic injury, but the point further is that, of course, the relief that he sought would not redress that injury, even if that were the injury that he and the National Coalition for Men were relying on. What he asked the district court to do was to order women also to register, and so that wouldn't change anything about the fact that either he has already registered or prospectively going forward about his obligations. For that reason, too, there is no hardship to Mr. Lesmeister or to the National Coalition for Men for deferring adjudication of this case until such time as the political branch that has expertise in these questions and whose factual findings on these questions. I do understand on a policy level very strongly why it might make sense for the courts not to wander into this right now, but I don't understand, and that might be a question of granting a stay while this issue is being considered in Congress or something like that, but I don't understand why that has anything to do with the question of rightness or standing. I mean, in other words, if Congress decided definitively next year that they're still going to have the draft only for men and the registration only for men and not for women, then would the case be right? They might lose, there might be deference, there might be a lot of things, but why is it not ripe? Your Honor, I'm not prepared to say that at that time the case would be ripe, but of course the dismissal here was without prejudice, and so Mr. Lesmeister and indeed any other plaintiff in this circuit would be free to challenge the decision at that time. Now, whether you put this in a ripeness doctrinal box or you conceive of it as the exercise of the district court's discretion not to enter a declaratory judgment, I think the point remains that only one of the political branches that has expertise and should have the opportunity to express a judgment on this issue has weighed in with its belief about what the policy should be. What will happen next is that Congress has 30 days, as to most of the changes, 30 days of continuous session with respect to some others, and I'm happy to distinguish between those if the court is interested, to review the Secretary's proposed policy change that policy has not been implemented, and Congress further recognized, and this is in 10 U.S.C. 652, that of course the question of women's eligibility to serve as a categorical matter in combat positions is related to the constitutionality of the men-only selective service registration requirement, and when we are on the precipice of the very sort of debate that was so important to the court's decision on the merits in Rosker that would inform this court's consideration of the merits question, indeed, that might obviate the need for the court to address the constitutionality of the selective service registration requirement at all. I submit that it's not appropriate, particularly in a case where the plaintiffs lack standing, for the court to reach out and decide the constitutional merits. Explain to me, obviously if they lack standing then it's not appropriate anyway, so let's just talk about standing for the time being. Ordinarily, in an equal protection case, or theoretically, the remedy can run either way, either men don't have to register or women do have to register, right? I mean that's just the way equal protection works. Usually it's not very likely that the conclusion is going to be that everybody has to register in this instance, but in this instance that's likely to be the case. How does that influence the standing issue? Well, here, as you say, Your Honor, the specific relief they've requested is to have women also register, and that would not redress the only, and I'm being generous in characterizing it as an injury. So there's no dignitary interest that's entitled to anything here saying, I shouldn't be singled out because of a man? They haven't alleged a dignitary interest, Your Honor, to the extent that they even get close to making that sort of injury argument, they do it in their response. I know this happens all the time, but suppose I was to take a racial example instead, and it was a law that said black people have to register, white people don't, and there was a lawsuit, and you'd say, would you say something different? Your Honor, for purposes of this case, the point is that the relief that the plaintiffs have sought would not redress the injury that they claim to have suffered, which is not a pure stigmatic injury. I think everybody, I'm being denied my equal protection rights, and the remedy should be that white people should have to register too. They couldn't bring that lawsuit. Your Honor, that's certainly not our position, and the court's standing decision in this case need not embrace that in order to rule for the government. Why? That's what I want to know. Because here, and I don't mean to be obstructive, Your Honor, but I do think it's important to focus on the complaint that was actually filed, and that complaint says only that Mr. Lesmeister is a man who has registered, and the relief that he would like is that women also register, relief that would change nothing about his circumstances. Counsel, Judge Gould, if I could interject a clarifying question. Please, Your Honor. Why isn't the question of relief an issue for the district court as opposed to what the allegation was? Your Honor, I'm looking to his relief to inform, because this is such a bare-bones complaint, what it is that his injury, he believes that he suffered, excuse me, even is. And so the relief that he sought would not redress the injury. Actually, that's not the relief he sought. The relief says that he wants injunctive relief ordering defendants to end the sex-based discrimination in its military draft registration program to treat men and women equally. So I'm looking at supplemental excerpts of record, page one, where it says that Mr. Lesmeister and the National Coalition for Men request injunctive and declaratory relief to treat women and men equally by requiring both women and men to register. That's the relief that he sought. Where is that? That's somewhere else in the complaint? So that's at supplemental excerpts of record, page one. Okay, but the actual relief sought doesn't say that. Pardon me? The actual relief, prayer for relief does not say that. Well, Your Honor, I think it's fair to read the prayer for relief in light of the more specific allegations, but it doesn't make any difference in this case because even that, I don't understand him to be asking to be stricken from the roles. The injury, the only thing that could conceivably amount to an injury that he's asserted here is that he is required to register, and he has registered. Even the relief that he states in his prayer for relief. What about everybody else who's a member of this organization? Your Honor, we don't have any information about any other member of this organization that would allow us to conclude that they have standing. Of course, it's incumbent on the organization to provide facts about an individual and identified member of their organization who would have standing. I can't just say we have people who are, we have an organization of men, I don't know exactly what they said, but if they did say it, they could have meant to say. We are an organization, we have people who are over 18 and who are required to register for the draft and either have or haven't. Well, Your Honor, first of all, that's not what they've said, and second of all, to the extent that they would like to say that, I'd remind the court again, that the dismissal here was without prejudice. There is nothing that bars them or any other plaintiff in this circuit from filing a properly framed complaint in the district court and proceeding on that basis. But again, here, we do also defend, and I want to correct any conception of the government as less than vigorously defending the ripeness. I do actually say that the membership is composed mostly of males, many of them aged 18 to 25 or who will be aging 25, and many of them have children or loved ones who are males and aged 18 to 25. So, what's the problem? Well, of course, Your Honor, as we pointed out in our brief, it's not the case that every man aged 18 to 25 needs to register. Look, the standing inquiry, the assertions that would have been required, it's not a demanding standard. The point is only that they must do more than they did to establish that they have Article III injury. They have not alleged an injury, they have not sought any relief that would redress that injury, and so even if this case were ripe or there were some question whether the district court appropriately exercised its discretion not to consider the merits at this time, the order of the district court should be affirmed. And that affirmance would not preclude Mr. Lesmeister or any other plaintiff from challenging the Selective Service registration in a future complaint framed with the appropriate assertions. The counsel on the relief they sought, does this complaint, unlike hundreds I must have seen in practice, not have some language in the prayer asking for like such other relief as the court may think appropriate? The fourth item in the prayer for relief is any other relief that the court deems just. But the point, Your Honor, is that the court should not enter the broad and sweeping programmatic relief that could be encompassed within this prayer, which I think the court should not rely on to the exclusion of the more specific allegations. But at any event, for this court to order sweeping relief in parallel. The court isn't ordering anything. All we're doing is ruling on a ripeness question. Then let me be more specific. For a district court, for this court to remand for consideration for the district court to order the sort of sweeping. And if they do that, you can come and argue with us as much as you like. And you can argue with them as much as you like. But, Your Honor, I think it's instructive to imagine what that argument might look like. Of course, we would be proceeding in that case without the benefit of the factual findings by one of the coordinate branches with responsibility and to whom deference is owed in their exercise of expertise in national defense and military affairs. I would certainly think it would be the better part of valor and of the district court, if we would send it back to him, to tell everybody to cool it for six months or a year while the Congress considers this because it's right on their docket right now. Yes, Your Honor, but to enter that order in a case where the plaintiff lacks standing, I submit, would be improper. There is nothing that prevents... If they lack standing, but that's the part I'm having trouble with. Well, there's nothing that prevents a plaintiff who has standing or a plaintiff who believes they have standing from filing a new complaint either in six months or today. What we don't have here... So give me an idea of what they'd have to say to have standing. Your Honor, I can't commit because I don't know what other things they might say, but the point is it wouldn't be very hard for them to offer the court more. Okay, so then it wouldn't be very hard. Then what we should do is send it back to amend the complaint. No, Your Honor. Of course, the plaintiff isn't here arguing that they tried to amend their complaint and that the district court denied it and that that was somehow improper. The problem is that they didn't say, you know, I have a dignitary interest in not being treated differently from women and have the government know where I am all the time just because I'm a man. They didn't say that, but they could say it. Your Honor, so they didn't say that, and that's the important point. And even if they had said that, of course, they would need to address cases like Allen v. Wright and to prove that they are affected in a concrete, a tangible, a personal way because that is what Article III requires. The district court didn't have that before in this case, and so for that reason alone, it's proper for the order of the district court to be affirmed. Okay, thank you. Thank you. You're out of time. Sir? Your Honors, I have to sometimes restrain myself when I hear anybody say that there is no harm going on. When somebody is forced to be an on-call warrior for the state because of their gender. Now, in this situation, we're not just talking about equal protection. Men are subjected to fines, prison. Men can't get federal jobs. They can't get federal loans. And in Elgin v. Bush, we've seen where men actually did lose their federal jobs. Well, you don't have any plaintiff who didn't register. At least you don't say you do. I'm sorry? You mean if they didn't register. In the Elgin v. Bush case that we cited in our briefs, there were men who lost their federal jobs years later in life because they hadn't registered when they were young. One of them was homeless. But you don't allege that you have any members who, although subject to the requirement, are refusing to register because they don't meet the requirement. That's correct. But let's also look at what happens. It's not just that they've registered. They have to continuously report their whereabouts, where their residence is, to the government for six years. That's not just a matter of registering. To suggest that Lesmester doesn't have standing just because he's already registered completely ignores that fact. That he has to continuously report. And, in fact, the lower courts in the Roster case acknowledge that and they completely threw out the argument that there was no ripeness. In this case, the district court didn't rule on the issue of ripeness. It's standing. I'm sorry, on the issue of standing. Is this case set up essentially identically to Rotsker in terms of who the plaintiffs are and how it's set up? That's true, except that we also have an organization, not just individual plaintiffs. I understand that. But in terms of whether they're standing to complain about the registration requirement, even though, I mean, I assume you would agree that the 99.5% likelihood is that the remedy is going to be, okay, the women have to register too if you win. I'm not sure I would agree that the likelihood is that high. There has been talk of eradicating the draft. There are people who have argued that. That's true, but of course to eradicate the draft is another question. Right. And the defense is absolutely wrong when they say that the harm would be de minimis just because men have to still register if women do because that's not the only remedy that the military could have used. There are several remedies, and one of them would be to eradicate it. Now for us to decide that that's very unlikely is really speculative. We weren't given the right opportunity to do discovery, to even find out what the position of the military branches was. And even to this day we haven't been given that opportunity. Find out because they have to submit a report to Congress, don't they? That's right. They had until May of 2013. No, but I thought now that they've decided on the combat question, they have to submit a report about the constitutional issues. That's correct, but even to this day we haven't. By when? Do you know by when? I believe it's in 30 days. But, Your Honor, we should be given the right to do discovery to find out what the exact status of the new directive is that was issued back in 2013 as well as what the opinions of the military branches were. They each had to submit a detailed report to the Department of Defense explaining Why are we worrying about what happened in 2013? Why are we worrying about what happened last week? Well, I'm talking about even to this day. If their argument is correct that even now it's not right, just because there are still some further developments to go, which I completely disagree with, but even if that were true, we should have a right to do discovery in order to find out, even right now, what the status is. We don't know now how many combat roles are open to women and how many are not. We don't know what the positions of the military branches are or what they wrote in their reports. We know what the combat roles are. This is all a little through the looking glass. We know what the military thinks. We don't know whether Congress might disapprove it. But what the military thinks is that all combat jobs are open to women. And in very short order, we're going to know whether Congress is going to disapprove that in some fashion. But right now, the position is that all combat jobs are open to women. No? Well, that is correct. I agree entirely. I'm saying if her position were correct, that it's not right now because there are more developments to go. I'm saying if that were true, we should have the right to do discovery. This case still should be remanded, even if that were true. I'm only covering my bases by responding to her argument. I fully agree with Your Honor's position that it is right now. I never said it was right. Well, okay. Anyway, go ahead. I'm sorry. Please don't put words in my mouth. I'm sorry. We know what the situation is now. Right. And it's different. That's correct. And that's what we have to base our decision on. That's correct. In that case, Your Honor, I have no other questions or argument to make. Thank you very much. I will submit. Thank you. Thank you. Thank you both. Case of National Coalition for Men versus Selective Service is submitted, and we will take a short break.
judges: Gould, Berzon, Steeh